**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

**ROBERT D. KING, JR.**
The Law Office of Robert D. King, Jr., P.C.
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**KATHERINE MODESITT COOPER**
Deputy Attorney General
Indianapolis, Indiana

**FILED**
Jan 30 2012, 9:21 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| ANDRE PERRY, | ) |
| | ) |
| Appellant-Defendant, | ) |
| | ) |
| vs. | )  No. 49A02-1105-CR-438 |
| | ) |
| STATE OF INDIANA, | ) |
| | ) |
| Appellee-Plaintiff. | ) |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Sheila A. Carlisle, Judge
The Honorable Stanley E. Kroh, Commissioner
Cause No. 49G03-1009-FB-72653

**January 30, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BROWN, Judge**

Andre Perry appeals his conviction and sentence for unlawful possession of a firearm by a serious violent felon as a class B felony and his sentence for three counts of criminal confinement as class B felonies and robbery as a class C felony. Perry raises three issues which we revise and restate as:

I. Whether Perry's conviction for unlawful possession of a firearm by a serious violent felon was fundamental error;

II. Whether the trial court abused its discretion in sentencing him; and

III. Whether his sentence is inappropriate in light of the nature of the offense and the character of the offender.

We affirm.

The relevant facts follow. In September 2010, Breana Aspling lived in Marion County, Indiana with her boyfriend Jacob Cline and their son, who was "[a] year and a few months" old. Transcript at 31. On September 17, 2010, Aspling was at home with Cline and their son. At 11:00 a.m., Dylan Homeier went to Aspling's house, and as Homeier walked up to Aspling's house, Perry, who was wearing a leather jacket, and Reuben Brown approached him. Homeier asked them if they were there for Cline, and they said yes.

Homeier knocked on the door, and Cline answered the door. Perry and Brown asked about Cline's cousin Eric Rardon. Cline called Rardon using his cell phone and gave the phone to Perry. After the conversation with Rardon, Perry asked to use the restroom, and when he returned, Brown put a gun to Aspling's face while she was holding her son. Brown told Aspling to sit on the couch, and Aspling complied. Brown

2

also told them that if they "tried to defend [themselves] or do anything, that he'd shoot [them] . . . ." Id. at 102-103.

Perry pulled out a silver revolver and "had [Cline] and [Homeier] get on the floor." Id. at 41. When Homeier did not lie on the ground immediately, Brown punched Homeier in the back of the head and told Homeier to "get down," and Homeier complied. Id. at 43. Either Perry or Brown or both of them said: "Where is the money?" Id. at 44. Perry and Brown went "through drawers and everything" and flipped over a couch "to make sure that nothing was under the couches." Id. at 44, 50. Perry "mostly ran the show." Id. at 145. After Perry and Brown finished collecting items, they told Aspling, Cline, and Homeier to go into the basement and led them down there one by one. Brown then "got on his cell phone and told whoever he called to pull up to the white truck, which [was Aspling's truck], and they'd be out in a minute." Id. at 53. Perry and Brown then closed the basement door and yelled at Aspling, Cline, and Homeier not to leave the basement. Brown told them that if they left they would be shot. Perry and Brown took money from Aspling's purse, Cline's wallet and social security card, Homeier's money and MP3 player, a Playstation, a camera, CDs, movies, a water jug used to collect change and one dollar bills, and their cell phones.

Aspling, Cline, and Homeier waited "maybe five minutes" before going upstairs and calling the police from a neighbor's house. Id. at 150. After leaving the basement, "everything was flipped over; everything was in disarray." Id. at 109. The police called Aspling's mother who had installed an application that allowed her to track Aspling's

3

phone on her phone. Using this information, police were sent to the location provided by the phone.

Indianapolis Police Officer Tom Figura arrived at the location and observed Brown standing near a white van. Officer Figura exited his marked police vehicle in full police uniform and told everyone at the scene to put their hands out in front of them. Perry initially had no response but eventually complied. Officer Figura observed a vehicle, which Perry had been standing near when he arrived, containing a video game system, leather jacket, and a cell phone. Officer Figura also observed a large plastic bottle containing loose change in another vehicle. The police recovered a cell phone and Cline's Social Security card under the van, a cell phone and MP3 player in the leather coat, two guns in a bag, and a red digital camera containing pictures of Aspling and Cline. Cline, Aspling, and Homeier identified Perry and some of the belongings that were recovered.

On September 20, 2010, the State charged Perry with six counts of criminal confinement as class B felonies and one count of robbery as a class B felony. On October 7, 2010, the State filed a motion to amend the charging information, which the court granted on October 15, 2010. The amended information charged Perry with Count IX, unlawful possession of a firearm by a serious violent felon as a class B felony, and Count XI, carrying a handgun without a license as a class A misdemeanor.[1] That same

---

[1] The information also contained charges against Brown.

day, the State filed "Part II" of Count XI which alleged carrying a handgun without a license as a class C felony.[2]

On April 12, 2011, the State dismissed three of the charges of criminal confinement as class B felonies and the charge of carrying a handgun without a license as a class C felony. After the first phase of the jury trial, the jury found Perry guilty of three counts of criminal confinement as class B felonies (Counts I, III, and V), robbery as a class B felony (Count VII), and carrying a handgun without a license as a class A misdemeanor (Count XI). After the second phase of the jury trial, the jury found Perry guilty of unlawful possession of a firearm by a serious violent felon as a class B felony (Count IX).

The court recognized the fact that prolonged incarceration would be an undue hardship on a dependent child was a mitigator. The court found Perry's prior unsuccessful attempts at rehabilitation, his criminal history, and the fact that there were multiple victims as aggravators. At the sentencing hearing, the court observed that "[t]he presentence report also shows on a [sic] pages 10 and 11 your conduct on prior incarcerations and that does reflect on your character." Id. at 506. The court also stated:

> The facts of this case, in particular the fact that a loaded handgun, you have a loaded handgun to the face of Ms. Aspling while she had her one and a half year-old child in her arms. That fact goes above and beyond facts necessary for the State to prove the convictions and the Court does believe that that also is an aggravating circumstance.

Id.

---

[2] The State charged Perry with "Part II of Count X," carrying a handgun without a license as a class C felony. Appellant's Appendix at 55. However, Count X alleged that co-defendant Brown carried a handgun without a license as a class A misdemeanor. Thus, it appears that "Part II" was actually related to Count XI, which alleged that Perry carried a handgun without a license as a class A misdemeanor.

5

The court sentenced Perry to ten years with three years suspended for each count of criminal confinement as class B felonies (Counts I, III, and V). The court ordered that Counts I, III, and V be served consecutive to each other. The court reduced the robbery conviction (Count VII) to a class C felony and sentenced Perry to four years. The court sentenced Perry to ten years for unlawful possession of a firearm by a serious violent felon as a class B felony (Count IX), and ordered that Count VII and Count IX be served concurrent with each other and Counts I, III, and V. Thus, the court sentenced Perry to an aggregate sentence of thirty years with nine years suspended.

## I.

The first issue is whether Perry's conviction for unlawful possession of a firearm by a serious violent felon was fundamental error. Perry argues that he "was not specifically charged with Unlawful Possession and Unlawful Possession is not a lesser included offense of the charged offense, Carrying a Handgun Without a License." Appellant's Brief at 9. Perry argues that "[i]t was fundamental error to convict Perry of a crime with which he was not specifically charged and which was not a lesser included offense of the charged offense." Appellant's Brief at 9. The State argues that Perry's argument "fails because the record clearly shows that the State specifically charged [Perry] with class B felony unlawful possession of a firearm by a serious violent felon and [Perry] therefore had notice of that offense." Appellee's Brief at 9.

The record reveals that the State moved to amend the charging information, that the court granted the motion, and that the amended information charged Perry with Count

6

IX, unlawful possession of a firearm by a serious violent felon as a class B felony. While the charging information also listed charges against Brown, the charging information indicated which charges related to Perry, and Count IX was assigned to Perry. Further, Count IX states:

> Andre Perry, being a serious violent felon, that is: having been convicted of Burglary, a Class B Felony, in Marion County Superior Court, Criminal Division, Room Four, under cause number 49G040110CF199392, on May 29, 2002, did on or about September 17, 2010, knowingly or intentionally possess a firearm, that is: a handgun[.]

Appellant's Appendix at 51.[3] Perry does not argue or point to the record to suggest that this count was ever dismissed. Based upon the record, we cannot say that any error occurred.

## II.

The next issue is whether the court abused its discretion in sentencing Perry. A trial court abuses its discretion if it: (1) fails "to enter a sentencing statement at all;" (2) enters "a sentencing statement that explains reasons for imposing a sentence – including a finding of aggravating and mitigating factors if any – but the record does not support the reasons;" (3) enters a sentencing statement that "omits reasons that are clearly supported by the record and advanced for consideration;" or (4) considers reasons that "are improper as a matter of law." Anglemyer v. State, 868 N.E.2d 482, 490-491 (Ind. 2007), clarified on reh'g, 875 N.E.2d 218 (Ind. 2007). If the trial court has abused its discretion, we will remand for resentencing "if we cannot say with confidence that the trial court would have imposed the same sentence had it properly considered reasons that enjoy

---

[3] Perry did not include Count IX in the charges against him in his statement of facts.

support in the record." Id. at 491. However, the relative weight or value assignable to reasons properly found, or those which should have been found, is not subject to review for abuse of discretion. Id.

Perry argues that the trial court abused its discretion when it found that he held a gun to Aspling's head as an aggravator because it was not supported by the evidence. The State argues that "[t]he fact that [Perry] and Brown committed their crimes against Aspling while she held her young son goes beyond the elements necessary to prove any of the charged crimes and was, therefore, a proper aggravating factor." Appellee's Brief at 13. The State also argues that Perry's claim that the trial court improperly attributed Brown's actions to him during sentencing lacks merit because the evidence showed that the two committed their crimes together. The State also notes that "[e]ven if the trial court did give a reason that was not supported by the record, other valid aggravating factors exist which support [Perry's] sentences." Id. at 13 n.4.

Even assuming that the aggravator related to the pointing a handgun in Aspling's face was improper, we may still affirm the trial court's decision if other valid aggravating circumstances exist. Gibson v. State, 702 N.E.2d 707, 710 (Ind. 1998), reh'g denied, cert. denied, 531 U.S. 863, 121 S. Ct. 155 (2000). In light of the remaining aggravators, which Perry does not challenge, we can say with confidence that the trial court would have imposed the same sentence. See, e.g., Drakulich v. State, 877 N.E.2d 525, 535 (Ind. Ct. App. 2007) (holding that we could say with confidence that the trial court would have imposed the same sentence if it considered only the proper aggravators), trans. denied.

## III.

The next issue is whether Perry's sentence is inappropriate in light of the nature of the offense and the character of the offender. Ind. Appellate Rule 7(B) provides that we "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, [we find] that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Under this rule, the burden is on the defendant to persuade the appellate court that his or her sentence is inappropriate. Childress v. State, 848 N.E.2d 1073, 1080 (Ind. 2006).

Perry argues that "[t]he most deplorable conduct was exclusively committed by Brown." Appellant's Brief at 13. Perry also argues that "[a]lthough [he] has a criminal history, this history is tempered when viewed through the lens of his family history and related history of substance abuse." Id. at 12. Perry points out that his father was murdered when he was six months old, that he was raised in an abusive home, and that his mother abandoned him when he was twelve years old. Perry requests that "this Court reduce his sentence, order that his sentences be run concurrently, or suspend a larger portion of his sentence to probation."[4] Id. at 14.

The State points out that Perry received the advisory sentence with three years suspended for each of the criminal confinement convictions and that the court reduced the robbery conviction to a class C felony. The State argues that Perry has a significant

---

[4] Perry recognizes that "[p]ursuant to Indiana Code § 35-50-2-2 . . ., this Court may [] suspend [only] the amount of Perry's sentence that is above the minimum sentence" which is six years for a class B felony, and that thus "this Court could suspend an additional year on" the three criminal confinement convictions. Appellant's Brief at 14 n.13.

and extensive criminal history and that Perry's "purported difficult childhood does not weigh in favor of a reduced sentence." Appellee's Brief at 16.

Our review of the nature of the offense reveals that Perry "mostly ran the show," that Brown put a gun to Aspling's face while she was holding her son, and Perry pulled out a silver revolver and "had [Cline] and [Homeier] get on the floor." Transcript at 41, 145. Either Perry or Brown or both of them asked: "Where is the money[?]" Id. at 44. Perry and Brown went "through drawers and everything" and flipped over a couch "to make sure that nothing was under the couches." Id. at 44, 50. After Perry and Brown finished collecting items, they told Aspling, Cline, and Homeier to go into the basement and led them down one by one. Brown told them that if they left they would be shot. Perry and Brown took money from Aspling's purse, Cline's wallet and social security card, Homeier's money and MP3 player, a Playstation, a camera, CDs, movies, a water jug used to collect change and one dollar bills, and their cell phones.

Our review of the character of the offender reveals that Perry has regular visitation with his two-year old daughter. At the sentencing hearing, Perry stated:

> Your Honor, I'd like to tell [Aspling], you know, I'm sorry for what happened. You know, I really – I don't even know you and I wish whatever happened to you would have never happened. But Dylan Homeier, I don't even know you either, man, and whatever happened to you I'm sorry, as well. I just, you know what I mean, I hope you all could get passed [sic] whatever happened to you all and put you all like move forward. Some things happen in life that shouldn't happen, and like I said, I'm sorry for whatever happened to you all.

Id. at 503.

Perry's history includes juvenile adjudications for burglary in 1995, consumption of alcohol in 1996, and disorderly conduct and battery in 1997. As a juvenile, Perry completed some programs successfully, but failed to successfully complete the "Kids Can" program, the "IPD Narcotics Presentation," formal home detention, and a suspended commitment to the Department of Correction.

As an adult, Perry has convictions in 2001 for battery by bodily waste as a class D felony, resisting law enforcement as a class D felony, and carrying a handgun without a license as a class A misdemeanor. In 2002, he was convicted of burglary as a class B felony and pointing a firearm as a class D felony. In 2007 and again in 2010, Perry was convicted of resisting law enforcement as a class A misdemeanor. His probation was revoked in 2006. Perry reported that he began smoking marijuana at the age of twelve years and described his marijuana use as "every day, a lot, wake up smokin' and go to sleep smokin'." Presentence Investigation Report at 15. As noted by the trial court, the presentence investigation report contains more than forty entries detailing Perry's conduct while in the Department of Correction which include "disruptive, unruly, rowdy conduct," "intimidation or threatening another," "fleeing or physically resisting staff," "battery w/ weap," and "habitual conduct rule violator." Id. at 10-11. After due consideration of the trial court's decision, we cannot say that the sentence imposed by the trial court is inappropriate in light of the nature of the offense and the character of the offender.

For the foregoing reasons, we affirm Perry's convictions and sentence for unlawful possession of a firearm as a class B felony, three counts of criminal confinement as class B felonies, and robbery as a class C felony.

Affirmed.

MAY, J., and CRONE, J., concur.